UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| MISTY S.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:17-cv-00198-SEB-DML |
| | ) |
| NANCY A. BERRYHILL Deputy | ) |
| Commissioner for Operations, Social Security | ) |
| Administration,[2] | ) |
| | ) |
| Defendant. | ) |

# ORDER

Plaintiff Misty S. ("Misty") appeals the final decision of the Deputy Commissioner for Operations ("Deputy Commissioner") of the Social Security Administration ("SSA") denying her June 9, 2014, application for disability insurance benefits ("DIB"). R. (Dkt. 13) at 11. The application was initially denied on September 12, 2014, R. at 74, and upon reconsideration on September 30, 2014. R. at 79. The administrative law judge ("ALJ") conducted a hearing on June 7, 2016, R. at 28, resulting

---

[1] In an attempt to protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

[2] On March 6, 2018, the President was notified that, effective November 17, 2017, Nancy A. Berryhill could no longer serve as the Acting Commissioner of the Social Security Administration pursuant to the Federal Vacancies Reform Act of 1998. Government Accountability Office, https://www.gao.gov/products/D18772#mt=e-report (last visited Apr. 27, 2018). The case caption has been updated to reflect the Deputy Commissioner's current title.

1

in a decision on August 31, 2016, that Misty was not disabled and thus not entitled to receive DIB. R. at 8. The Appeals Council denied review on August 24, 2017, and the Deputy Commissioner's decision became final. R. at 1. On October 27, 2017, Misty timely filed this civil action seeking judicial review of that the decision pursuant to 42 U.S.C. § 405(g). Dkt. 1.

For the reasons below, the decision is reversed and the case remanded for action consistent with this order.

## **Background[3]**

The ALJ followed the five-step sequential evaluation set forth by the SSA, *see* 20 C.F.R. § 404.1520(a)(4)(i) to (v), in concluding that Misty was not disabled. Specifically, the ALJ found as follows:

- At Step One, Misty had not engaged in substantial gainful activity[4] since May 25, 2014, the alleged disability onset date. R. at 13.

- At Step Two, she had the following severe impairments: "history of left knee crush injury, degenerative joint disease/bursitis of the left knee, status post fluid removal surgery and obesity." *Id.* (citation omitted).

- At Step Three, she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. R. at 14.

- After Step Three but before Step Four, Misty had the residual functional capacity ("RFC") "to perform sedentary work as defined in 20 CFR 404.1567(a). She can sit for six hours in an eight-hour workday but must be permitted to alternate to

---

[3] The discussion of Misty's medical history and treatment includes sensitive and otherwise confidential medical information. To the extent possible, we detail here specific facts only as necessary to address the parties' arguments.

[4] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

2

standing or walking for three to five minutes after 30 to 45 minutes of sitting, and can stand or walk for two hours in an eight-hour workday but must be permitted to alternate to sitting for three to five minutes after every 20 to 30 minutes of standing or walking. She can occasionally operate foot controls with the left lower extremity. She can occasionally balance, stoop, kneel, crouch, crawl and climb ramps and stairs, but can never climb ladders, ropes or scaffolds. She is limited to occasional exposure to unprotected heights, moving mechanical parts, and vibration, and must avoid concentrated exposure to slippery, wet or moving surfaces." *Id.*

- At Step Four, relying on the testimony of the vocational expert ("VE") considering Misty's RFC, she was incapable of performing her past relevant work as a waitress and utility worker. R. at 19.

- At Step Five, relying on the testimony of the VE and in light of Misty's age (30 years old on the alleged disability onset date, May 25, 2014), education (at least a high school graduate), and RFC, there were jobs that existed in significant numbers in the national economy that she could have performed through the date of the decision. R. at 19-20.

## **Standard of Review**

Upon review of the Deputy Commissioner's decision,

> [w]e will uphold [it] if it applies the correct legal standard and is supported by substantial evidence. *Castile v. Astrue,* 617 F.3d 923, 926 (7th Cir. 2010). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007)). A decision denying benefits need not discuss every piece of evidence, but if it lacks an adequate discussion of the issues, it will be remanded. *Villano v. Astrue,* 556 F.3d 558, 562 (7th Cir. 2009). Our review is limited to the reasons articulated by the ALJ in her decision. *Larson v. Astrue,* 615 F.3d 744, 749 (7th Cir. 2010).

*Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010). In determining whether the decision was properly supported, we neither reweigh the evidence nor assess the credibility of witness, nor substitute our judgment for the Deputy Commissioner's. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).

## Analysis

Misty presents three issues for review: whether the ALJ erred (1) by failing to include a limitation in the RFC finding that she would need to elevate her legs,[5] (2) in his evaluation of her subjective symptoms, and (3) by giving only partial weight to the opinion of her treating orthopedic specialist, Travis E. Clegg, M.D. ("Dr. Clegg"). We agree the ALJ did not provide an adequate explanation of how the above issues were resolved in favor of denying benefits. This was reversible error.

The SSA's regulations and rulings, as interpreted by the Seventh Circuit, impose on the ALJ a duty to articulate certain critical aspects of his decision. "The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." Social Security Ruling 16-3p, 2017 WL 5180304 at *10. In assessing a claimant's symptoms, the ALJ is required to "build an accurate and logical bridge from the evidence to [the] conclusion." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

Misty testified consistently throughout the hearing, in detail, about the need to elevate her leg while sitting. She testified to being in pain with prolonged sitting,

---

[5] We note that there appears in the record and in the briefing some ambiguity as to whether Misty's condition affects, and whether her proffered limitation would apply to, both of her legs or her left leg only. But we have found this ambiguity material neither to the decision below nor to ours here.

including in the type of chair she was seated in during the hearing. R. at 36. When examined by the ALJ, she was asked what her most comfortable position at home was and responded, "I sit in my recliner with my feet propped." *Id*. When asked if she thought she could perform a job where she could sit for most of the day, but get up periodically as needed, she responded, "No, sir. My leg swells." R. at 41. The ALJ inquired, "This is the left leg?" *Id.* "Yes, sir." *Id.* When asked what she does for her leg when it swells, she explained further:

> [Misty:] I have this knee brace that I can't wear right now, because my leg's too swollen to get it [on]; I have a compression sleeve that I have to wear on my ankle to keep the swelling out of my foot; and I have to use ice and heat. And I have to elevate it.
>
> [ALJ:] Okay. How often do you elevate?
>
> [Misty:] At least 20 minutes every hour.
>
> [ALJ:] How high?
>
> [Misty:] Higher than my heart.
>
> [ALJ:] So, you do, you do that every hour of every day, you're elevating your leg 20 minutes—
>
> [Misty:] Yes, sir.
>
> [ALJ:] —out of—did a doctor tell you to do that?
>
> [Misty:] To minimize the swelling, yes.

*Id*. Later in the hearing, Misty's representative asked her to show the ALJ her left leg, to which he commented on the record, "It . . . looks pretty swollen." Misty confirmed it was considerably more swollen because she had been unable to prop it up for a couple of hours in order to attend the hearing. R. at 45.

In a later portion of the hearing, the VE testified that in addition to the limitations that would eventually be the ALJ's RFC finding, if an individual needed to elevate her leg to heart level at regular intervals during the course of the workday for periods of fifteen to twenty minutes at a time, the limitation "would preclude full-time competitive work." R. at 52-53.

Despite this testimony, the ALJ's decision did not discuss why this potential limitation was discredited. The omission at the very least frustrates meaningful review. And a similar omission was held reversible error by the Seventh Circuit in *Smith v. Astrue*:

> Regarding leg elevation, Smith notes that the ALJ made only a cursory comment on this point: "The medical records do not support the limitations alleged by the claimant that she is medically required to elevate her legs." The ALJ failed to link any of the evidence to her conclusion regarding leg elevation, Smith asserts, and she accuses the [Deputy] Commissioner of trying to salvage the ALJ's conclusion through "post hoc rationalization."
>
> Given the perfunctory nature of the ALJ's discussion of leg elevation, we agree with Smith. An ALJ must explain her reasoning, building a so-called "logical bridge" that connects the evidence and her decision.

467 F. App'x 507, 510 (7th Cir. 2012) (remanding case). The Deputy Commissioner makes no attempt to distinguish *Smith*. Here, the ALJ made not even a conclusory statement that the limitation was unnecessary, much less an effort to connect the evidence to his ultimate conclusion.

Furthermore, Misty's proffered limitation is bolstered by the opinion of a treating orthopedic specialist. *Compare id.* (remanding even in absence of claimant's supportive treating opinion). On April 30, 2015, Misty was examined by Dr. Clegg for knee pain,

6

well after the injury to her left leg occurred and nearly a full year after her alleged disability onset date. R. at 345. Dr. Clegg commented, "At this point I did not feel like there is anything I can do for her from a surgical standpoint." R. at 347. "Unfortunately this may just be as good as she is going to get from this injury." *Id.* At a later follow-up visit on June 13, 2016, Dr. Clegg opined,

> At this point she is . . . currently applying for disability which I think is very reasonable. The primary issue why she can't work is that she has to be off her feet and keep her legs elevated most of the day in order to prevent swelling. Anytime she is standing or sitting with her legs hanging down for more than an hour the leg swells [and] becomes very painful.

R. at 363.

The ALJ acknowledged Dr. Clegg's opinion, but did not provide good reasons for discounting the limitation embodied in it. "An ALJ must offer 'good reasons' for discounting the opinion of a treating physician." *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011) (citing *Martinez v. Astrue*, 630 F.3d 693, 698 (7th Cir. 2011); *Campbell*, 627 F.3d at 306). "Generally, [the SSA] give[s] more weight to the medical opinion of a source who has examined [a claimant] than to the medical opinion of a medical source who has not examined [the claimant]." 20 C.F.R. § 404.1527(c)(1). Additionally, the SSA generally

> give[s] more weight to the medical opinions from [a claimant's] treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical evidence that cannot be obtained from the objective medical findings alone or from reports of individualized examinations, such as consultative examinations or brief hospitalizations.

7

20 C.F.R. § 404.1527(c)(2). Finally, the SSA "generally give[s] more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(c)(5).

Here, the ALJ concluded that Dr. Clegg's opinion was deserving of only "partial weight," explaining that, "[w]hile he is a treating source, his opinion is not entirely consistent with the objective medical evidence of record, or fully supported by relevant evidence." This explanation falls short by failing to specify the objective or relevant evidence that contradicts Dr. Clegg's opinion, which would otherwise be deserving of considerable, even controlling, deference.

The Deputy Commissioner contends that Dr. Clegg's assessment is inconsistent with his own treatment note from the April 2015 appointment, where he made no mention of Misty's need to elevate her legs. For one, we find the ALJ's written decision devoid of such reasoning. "Under the *Chenery* doctrine, the [Deputy] Commissioner's lawyers cannot defend the agency's decision on grounds that the agency itself did not embrace." *Kastner v. Astrue*, 697 F.3d 642, 648 (7th Cir. 2012) (citing *SEC v. Chenery Corp.,* 318 U.S. 80, 87–88 (1943); *Parker v. Astrue,* 597 F.3d 920, 922 (7th Cir.2010)). Moreover, had such reasoning been stated, it would have been of dubious value. At the April 2015 visit, Dr. Clegg "discussed modalities to help control pain including ice/heat, compression, etc." R. at 347. The advice given appears to be aimed at managing swelling and is consistent with Misty's testimony about the remedial measures she has to take to address it.

We find in the record no grounds to doubt Dr. Clegg's unequivocal statement about the need to elevate Misty's leg, dictated at the following visit, based on the advice that was previously given. The record contains multiple references to occasions on which Misty was advised by different providers to "[e]levate extremity when at rest." R. at 243-44. There is further evidence that she in fact followed that advice. On June 26, 2013, "[s]he [was] elevating and using ice." R. at 243. On June 6, 2015, "[s]he wears a brace most of the time. Takes ibuprofen/naproxyn for pain on a daily basis along with the last month alternating moist heat and ice with rest and elevation." R. at 334.

Absent the ALJ linking relevant evidence to his conclusion that Dr. Clegg's opinion was deserving of only partial weight, we have conducted our own review of the record. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986) ("[T]he district court [is] obliged to review all the evidence contained in the record[.]"). Dr. Clegg's contemporaneous treatment notes indicated that "all imaging studies were personally reviewed," and "the knee d[id] show significant scar tissue on MRI." R. at 362. His examination indicated that Misty's "knee joint show[ed] mild effusion," and "some swelling [was] noted at the ankle." *Id*. The balance of the record contains other relevant, supportive evidence. On March 7, 2013, a provider "aspirated 30 cc's of fluid from [Misty's] knee." R. at 241. On November 19, 2013, a biopsy of a mass removed from Misty's left knee indicated "adipose tissues show[ing] a focal area of fat necrosis and chronic inflammation." R. at 264. The operative report noted her knee "had been aspirated of clear fluid on 3 different occasions." R. at 269. On January 9, 2015, an examination revealed "[i]increased swelling surrounding [left] knee and into lower leg."

9

R. at 286. On January 20, 2015, Misty's complaints included "[c]hronic swelling of knee" and the examination showed positive effusion. R. at 331-32. We find here nothing inconsistent with Dr. Clegg's opinion, much less the kind of obvious contradiction as might obviate the need for a reasoned written decision.

The Deputy Commissioner contends further that the ALJ's RFC determination is supported by the opinions of two state-agency reviewing consultants and a one-time consultative examiner, all of which the ALJ gave "great weight." R. at 18. But these opinions were all given in September 2014, well before Dr. Clegg's assessment. R. at 59-61, 68-70, 279. We find no reason in the decision in favor of crediting these outdated opinions over the more recent opinion of a treating specialist who had the benefit of examining Misty on more than one occasion, particularly given that the other opinions did not specifically address whether or not she would need to elevate her leg. The Deputy Commissioner asserts that the absence of any such limitation creates a negative inference that elevation is not medically necessary, but the Seventh Circuit has suggested the contrary. *See Chase v. Astrue*, 458 F. App'x 553, 557 (7th Cir. 2012) ("The [Deputy Commissioner] defends the ALJ's ruling on grounds that the ALJ considered . . . the state-agency physicians' conclusions that Chase could do sedentary work. But the state-agency physicians said nothing about foot elevation . . . .").

Misty's case may be instructively contrasted with that of *Britt v. Berryhill*, 889 F.3d 422 (7th Cir. 2018). There, the claimant's

> strongest argument [was] that the ALJ failed to evaluate his testimony that he needed to elevate his foot as a treatment measure to reduce pain. That restriction [was] outcome-determinative because the [VE] testified that

10

> elevating his foot during working hours would exclude all jobs. [Claimant] maintains that the case must be remanded because the ALJ acknowledged his claim that he must elevate his foot at work but failed to explain why that limitation was not included in the RFC. ALJs must confront evidence that supports a finding of disabled, like Britt's testimony, and then explain why it was rejected. *See O'Connor-Spinner v. Astrue*, 627 F.3d 614, 621 (7th Cir. 2010). And RFC assessments must explain why a reported limitation is or is not consistent with the evidence in the record. SSR 16-3p, 2017 WL 5180304, at *8.

*Id.* at 425–26. The court upheld the ALJ's decision, concluding that the ALJ had explained why he rejected the claimant's testimony, including an explanation that the ALJ had given great weight to a medical expert that testified that elevation was not medically necessary. *Id.* at 426. The court also found the ALJ justified in discounting a treating orthopedic opinion, which stated

> that [Claimant] should elevate his foot "as needed." But here too there was no error because that recommendation was a temporary measure. [The treating physician] recommended—immediately after the injury and almost a year before [Claimant's] alleged onset date—merely that [Claimant] elevate his foot to reduce swelling. No objective medical evidence post-dating [Claimant's] alleged onset date support[ed] his allegation that he must elevate his leg at work. In fact, . . . the medical expert who testified at [Claimant's] first hearing . . . opined that elevation was not medically necessary after the alleged onset date.

*Id*.

Here, by contrast, there is no contrary medical opinion specifically addressing the issue, much less the opinion of medical expert with the benefit of having reviewed the longitudinal record. Dr. Clegg was not offering a temporary measure immediately after the injury. Dr. Clegg's opinion was given well after the alleged onset date, appears to be a permanent restriction, and was supported by objective evidence during the period at issue. Accordingly, we believe the instant case is distinguishable from *Britt*. Given the

11

supportive evidence and absence of any relevant and focused discussion that we can adequately review, remand is necessary for further consideration of the outcome determinative issue.

## **Conclusion and Order**

For the reasons explained above:

The ALJ's decision is REVERSED.

The case is REMANDED for proceedings consistent with this order under sentence four of 42 U.S.C. § 405(g). Final judgment shall issue by separate document. Fed. R. Civ. P. 58(a).

IT IS SO ORDERED.

Date: 7/30/2018

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Lu Han
SOCIAL SECURITY ADMINISTRATION
lu.han@ssa.gov

William Joseph Jenner
JENNER, PATTISON, HENSLEY & WYNN, LLP
jjenner@wjennerlaw.net

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
kathryn.olivier@usdoj.gov